IN RE: SUCCESSION OF Betty Joyce Weathers COON

2016 CA 0240

Court of Appeal of Louisiana, First Circuit.

OCTOBER 31, 2016

---

Felix A. Dejean, IV, Baton Rouge, Louisiana, Counsel for Plaintiff/Appellant, Brian Keith Hall

Mark R. Callender, Baton Rouge, Louisiana, Counsel for Defendant/Appellee, Douglas P. Coon, Sr.

BEFORE: WHIPPLE, C.J., GUIDRY, AND McCLENDON, JJ.

McCLENDON, J.

|₂Heirs challenge a trial court's ruling that reopened a succession, ordered the filing and execution of a statutory will, and appointed a testamentary executor. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mrs. Betty Joyce Weathers Coon died on December 6, 2013. She was survived by five adult children who were born during her first marriage to Gerald W. Hall, Sr., namely: Jeffrey Wayne Hall, Kimberly Ann Smith, Gerald Wayne Hall, Jr., Vickie Lynn Hall Frick, and Brian Keith Hall (collectively, "the Hall Children"). Following her divorce from Gerald W. Hall, Sr., Mrs. Coon married Douglas P. Coon, Sr. in 1986. The couple had been married for 27 years when Mrs. Coon died.

Prior to her death, Mrs. Coon executed a statutory will in accordance with former

LSA-R.S. 9:2442.[1] The statutory will was executed on December 27, 1994, before Rosalie B. Smith as Notary Public and Mark D. Plaisance and Sandra L. Crain as the witnesses. The statutory will, among other things, bequeathed a one-sixth ownership interest in the family home, which was Mrs. Coon's separate property, to Mr. Coon; gave him a usufruct over the remaining ⅚ interest in the family home until remarriage or death; and named Mr. Coon executor. The remaining ⅚ interest in the family home was divided equally between the Hall Children.

On the night Mrs. Coon died, Mr. Coon asked Kimberly, Mrs. Coon's daughter, to retrieve her mother's will. Kimberly testified that her mother had previously indicated to her where the will was located. Accordingly, Kimberly and her brother, Jeffrey, went into her mother's room and retrieved the will from a secret compartment in a nightstand.

Thereafter, Jeffrey read the will in front of everyone present, including all of the other Hall Children and Mr. Coon. Kimberly recalled that the will allowed Mr. Coon "to stay in the house until he remarried . . . or passed away" and it "split the house between I think it was six of us, which I think she included [Mr. Coon] on that ⅙th."

Subsequently, Mr. Coon, who wished to access his deceased wife's checking account, signed an Affidavit of Jurisdiction and Relationship (Small Deposit Affidavit) on January 31, 2014.[2] In the affidavit, Mr. Coon attested that Mrs. Coon died intestate. However, according to Mr. Coon, he never used the affidavit.

On August 1, 2014, Kimberly and Brian filed a petition for possession, attaching thereto the Small Deposit Affidavit executed by Mr. Coon. Therein, Kimberly and Brian alleged that the decedent died intestate as evidenced by the Small Deposit Affidavit executed by Mr. Coon, which Kimberly had taken from the family home. This petition was filed despite the fact that both Kimberly and Brian were fully aware of the existence of Mrs. Coon's statutory will. Petitioners prayed that the Hall Children be recognized as Mrs. Coon's sole heirs-at-law and as owners of the decedent's property. The trial court signed a Judgment of Possession on August 4, 2014, recognizing the Hall Children as sole heirs and placing them in possession of the decedent's property, including the family home.

Thereafter, the Hall Children, through their attorney, mailed a copy of the Judgment of Possession to Mr. Coon, along with a demand that he vacate the family home. Additionally, Brian filed a "Petition for Eviction" seeking to evict Mr. Coon from the home.

In response, Mr. Coon filed a "Petition to Annul The Judgment of Possession and to Reopen the Succession, Execute Will, Appoint Executor and Assert Claim." Mr. Coon alleged that his wife died testate and attached the statutory will dated December 27, 1994, to his petition. Mr. Coon prayed that the trial court: 1) reopen the succession with the submission of the original will; 2) order a filing and execution of the will in accordance with LSA-C.C.P. art. 2891; 3) appoint Mr. Coon as executor without necessity of providing security;

1. Louisiana Revised Statutes 9:2442 was later repealed by 1997 La. Acts, No. 1421, § 8, eff. July 1, 1999. The substance of the statutory will requirements found in LSA-R.S. 9:2442(A)-(B) was later reproduced in LSA-C.C. art. 1577. For a comparison, see **In re Succession of Hebert**, 12–281 (La.App. 3 Cir. 10/3/12), 101 So.3d 131, 134 n.1.

2. See LSA-R.S. 6:315.1 which is entitled "Transfer of small deposits; death of depositor; affidavits required; penalties."

and (4) vacate, annul and/or set aside the ex parte Judgment of Possession signed on August 4, 2014.

Subsequently, Brian filed a petition seeking to be appointed the succession's administrator.

Following a hearing on November 23, 2015, the trial court rendered a judgment dated January 26, 2016, that ordered the succession be reopened and the last will and testament dated December 27, 1994, be filed and executed, "with this filing and execution having the full effect of probate of this statutory Last Will and Testament." The trial court also appointed Mr. Coon executor in accordance with the will and "vacated, annulled and/or set aside" the August 4, 2014 Judgment of Possession. The trial court denied Brian's motion to be appointed administrator.

The Hall Children have appealed, asserting seven assignments of error and presenting the following issues for review:[3]

1. Whether the succession of Betty Joyce Weathers Coon should have been reopened by the district court.

2. Whether Mrs. Coon's "will" should have been accepted as valid by the [d]istrict court.

3. Whether Mr. Coon should have been named Testamentary Executor.[4]

---

**3.** While we do not separately address the seven assignments of error, we have considered them in connection with the issues presented for review.

**4.** Louisiana Code of Civil Procedure articles 2122 and 2974, when read together, allow an appeal from a judgment appointing or removing a succession representative. See **In re Succession of LeBouef**, 13–0209 (La.App. 1 Cir. 9/9/14), 153 So.3d 527, 533. Moreover, in the case of a restricted appeal such as this, an appellant may also appeal an interlocutory judgment involving the same or related issues.

## DISCUSSION

Louisiana Code of Civil Procedure article 3393 provides for the reopening of a succession. The article provides, in pertinent part:

B. After formal or informal acceptance by the heirs or legatees or rendition of a judgment of possession by a court of competent jurisdiction, if other property is discovered, or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be opened or reopened, as the case may be, regardless of whether or not, theretofore, any succession proceedings had been filed in court. The court may appoint or reappoint the succession representative, if any, or may appoint another, or new, succession representative. The procedure provided by this Code, for an original administration, shall apply to the administration of successions formally or informally accepted by heirs or legatees and in successions where a judgment of possession has been rendered, in so far as same is applicable.

The basic purpose of the article is to provide a means for dealing with overlooked succession assets. **Succession of Villarrubia**, 95–2610 (La. 9/5/96), 680 So.2d 1147, 1150. Courts have found "other proper cause" under LSA-C.C.P. art. 3393 to exist under extremely limited circumstances,

---

**Carrollton Presbyterian Church v. Presbytery of South Louisiana of Presbyterian Church (USA)**, 11–0205 (La.App. 1 Cir. 9/14/11), 77 So.3d 975, 978–79, writ denied, 11–2590 (La. 2/17/12), 82 So.3d 285, cert. denied, —— U.S. ——, 133 S.Ct. 150, 184 L.Ed.2d 32 (2012). To determine the merits of whether Mr. Coon should have been appointed testamentary executor, we must first address the interlocutory rulings raised in issues number one and two. As such, all issues raised by the Hall Children are properly before this court on appeal.

such as where a valid will is discovered after the administration of an intestate succession. **Id.** Whether or not a succession will be reopened is within the sound discretion of the trial court. **Id.**

■ In their first two issues presented for review, the Hall Children assert that the trial court should not have reopened Mrs. Coon's succession and should not have accepted the December 27, 1994 will as valid. The Hall Children contend that Mr. Coon, if he believed a will existed, had a duty to inform the court and to produce any and all versions of Mrs. Coon's will in his possession. The Hall Children assert that there may be three or more versions of Mrs. Coon's will. Specifically, the Hall Children aver that in addition to the December 27, 1994 will, there is possibly an olographic testament and another statutory will. However, none of these alleged referenced wills have been produced nor have they been proven to be valid if they exist. Additionally, there has been no challenge to whether the will filed with the court meets all the requirements for a valid statutory will.

With regard to the alleged olographic testament, the Hall Children presented the testimony of Rita Britten, who dated Mr. Coon following Mrs. Coon's death. Ms. Britten testified that she had read a document shown to her by Mr. Coon, which appeared to be Mrs. Coon's will. The document was not typewritten, but was handwritten on "greenish" legal-size paper. Ms. Britten testified that the purported olographic will bequeathed one-sixth interest in the family home to Mr. Coon. She also recalled the will mentioning a usufruct, giving Mr. Coon "rights to the house until he dies or he remarries." She further testified that Mrs. Coon's signature and the witnesses' signatures appeared on the document. Ms. Britten's testimony does not indicate any conflict between the contents of the purported olographic will and the provisions of the statutory will filed and executed by the trial court.

With regard to the alleged additional testamentary will, Kimberly testified that the December 27, 1994 will that was probated was exactly the same as the will read the night Mrs. Coon died, but claimed that the will read the night Mrs. Coon died did not have a notarial seal. Further, Brian asserts that a copy of the will he later retrieved from the bank contained "no dates or anything on it," but admitted that he did not hold or see the will after Kimberly retrieved it from her mother's nightstand.

The Hall Children aver that Mr. Coon, even if he believed the other wills to be invalid, was required to produce them to the trial court. In this regard, LSA-C.C.P. art. 2853 provides:

If a person has possession of a document purporting to be the testament of a deceased person, even though he believes that the document is not the valid testament of the deceased, or has doubts concerning the validity thereof, he shall present it to the court with his petition praying that the document be filed in the record of the succession proceeding.

A person so presenting a purported testament to the court shall not be deemed to vouch for its authenticity or validity, nor precluded from asserting its invalidity.

The Hall Children posit that Mr. Coon, in attempting to reopen the intestate succession, presented one of "many wills," rather than a valid will. Further, the Hall Children contend that Mr. Coon, in an attempt to access a bank account, signed the Small Deposit Affidavit, wherein he attested that Mrs. Coon died intestate. In light of the Small Deposit Affidavit and the questions about potential other wills, the Hall Children submit that the trial court should not

have reopened the succession and accepted the December 27, 1994 will as valid.

When the trial court reopened Mrs. Coon's succession, it was aware of all these contentions. Although the Hall Children posit that other wills may exist, they did not introduce any other will into the succession proceeding, despite having unfettered access to the family home following their mother's death. Also, no party has challenged that the December 27, 1994 will does not meet statutory requirements. Even though the Hall Children submit that other wills may exist, all evidence indicates that they are similar in substance to the statutory will. Further, it is possible that these purported |₇wills may be drafts, copies, or notes, and/or may predate the statutory will filed with the court.

In reopening the succession and accepting the December 27, 1994 will, the trial court reasoned:

There has been no challenge to the validity of the will other than assertions that a woman with whom Mr. Coon had a romantic relationship later says that doesn't look like the will that he showed her and the fact that Mr. Coon executed an affidavit saying there was no will in an attempt to get access to certain bank accounts.

The fact is that the children always had access to everything that was in the house or at least up to the time of their mother's death and for at least some three or four months thereafter. Ms. [Kimberly] Smith is the one who found the affidavit that has been referred to many times. It was Ms. Smith's testimony in her deposition that the will was read the night of her mother's death, and it said what she says the copy says. No other will was found. She's the one that accessed the hidden drawer in her mother's night side table to extract the original will.

There has been no evidence whatsoever that there is another will. There is conjecture. There is, as I said, the testimony of this other woman ... that says she thinks it was a handwritten will. But even then, she gives the terms that are included in what appears to be a valid will.

The presentation of a will is valid grounds for reopening a succession, and it's almost a mandatory ground for reopening a succession. There has been argument about the testator's will and so forth; that is, the testator's desires, and clearly, under the law, that is what is to be given the most effect, and it is given effect through a valid written will if one is available.

\*\*\*

...There has been no other will presented, even though these children had complete access to the house and all of their mother's business. Ms. Smith testified that she helped her mother, and her mother talked to her about her business, and she helped her mother take care of her business, but nobody has been able to come up with any other will. There has been no evidence or testimony that her mother declared that she was revoking that will or wanted to tear it up. And obviously, it was never torn up or revoked or otherwise invalidated, at least not in anything that has been presented to this court.

Considering the trial court's well-explained reasons and following our review of the record, we cannot conclude that the trial court abused its discretion in reopening the succession; nor do we find any error in the trial court filing, executing, and giving the December 27, 1994 statutory will full effect of probate.

■ The Hall Children further contend that the trial court erred in naming Mr. Coon testamentary executor because of

Mr. Coon's bad moral character. See LSA-C.C.P. art. 3097A(6)("No person may be confirmed as testamentary executor ... who, on contradictory hearing, is proved to be unfit for appointment because of bad moral character.") Further, they assert that Brian, whose motion to be appointed administrator was denied by the trial court, should be named executor.

To support their claim that Mr. Coon has bad moral character, the Hall Children note that Mr. Coon gave away some of their mother's clothing and a painting. They also aver that Mr. Coon discussed potentially selling some of their mother's jewelry to pay an attorney to handle the succession. Further, despite Mr. Coon's knowledge of a will, the Hall Children point out that Mr. Coon executed the Small Deposit Affidavit wherein he attested that Mrs. Coon died intestate.[5] They also allege that Mr. Coon has failed to pay property taxes and homeowners' insurance. The Hall Children additionally note an incident wherein the police were called due to an argument between Mr. Coon and one of the Hall children arising from Mr. Coon allowing a girlfriend to stay in the home just months after Mrs. Coon's death. For the foregoing reasons, the Hall Children assert that Mr. Coon has bad moral character that should preclude him from being executor.

The Hall Children also cite **Succession of Horrell**, 97–2115 (La.App. 4 Cir. 3/25/98), 709 So.2d 1069, writ denied, 98–1023 (La. 5/29/98), 720 So.2d 669, in support of their position. Therein, the trial court disqualified a testamentary executor for bad moral character when the disqualified administrator, who was an attorney, was aware that his father may have lacked testamentary capacity prior to executing a will, but nevertheless submitted the document to him. Under those circumstances, coupled with the animosity among the family members, the appellate court found no abuse of the trial court's discretion in refusing to appoint the testamentary executor as succession administrator. **Succession of Horrell**, 709 So.2d at 1071.

Initially, we note that unless the person named in the testament as executor is disqualified on any of the grounds assigned in Louisiana Code of Civil Procedure article 3097, the court shall render an order upon his petition for confirmation, confirming him as testamentary executor and directing the issuance of letters testamentary to him after he has taken his oath of office and furnished security, if required. LSA-C.C.P. art. 3082. Universally, the courts as far as possible carry out the intention of the testator by seeing that the administration of the estate is committed to the one designated by him. **Succession of Browne**, 244 La. 36, 39, 150 So.2d 555, 556 (La. 1963). Here, Mrs. Coon named Mr. Coon as executor in her will.

Although there appears to be animosity between the Hall Children and Mr. Coon, there is no allegation or showing of such surreptitious acts by Mr. Coon in obtaining the will as were present in **Horrell**. On the night her mother died, Kimberly retrieved from her mother's nightstand the statutory will that named Mr. Coon executor. The statutory will has been presented to the trial court, and the Hall Children do not challenge that the will complies with the legal requirements. Further, the Hall Children have not presented any other valid

---

**5.** We are somewhat perplexed by the Hall Children's argument that Brian should be named administrator due to Mr. Coon's bad moral character, based in part on his execution of the Small Deposit Affidavit, when the Hall Children themselves opened an intestate succession knowing full well that the statutory will existed, contrary to the requirements of LSA-C.C.P. art. 2853.

wills. Additionally, in response to the Hall Children's various allegations, Mr. Coon testified that the painting he disposed of was given to his wife's sister in accordance with his wife's oral wishes, and was later retrieved after his actions were questioned. With regard to the allegations concerning Mr. Coon's failure to obtain insurance on the home, the record is unclear regarding whether the family home had been insured at all times prior to Mrs. Coon's death.[6] Addressing the property taxes, Mr. Coon testified that he and Mrs. Coon paid the property taxes since the day they got married, but acknowledged that Brian had paid them since Mrs. Coon died.

While the trial court questioned some actions taken by Mr. Coon, the trial court did not conclude that these acts rose to the level to disqualify the testamentary executor on grounds of bad moral character. Cf. **Succession of Browne**, 244 La. at 41–42, 150 So.2d at 557–58 (Allegations that the testamentary executor was unfit to be appointed to that role because he and his wife had utilized $15,000.00 in the decedent's assets to improve their own property and had drawn checks on decedent's account in excess of $3,000.00 fell "far short of any charge that would warrant his classification as '[a] person * * * of bad moral character' within the meaning and contemplation of Article 3097 of the Code of Civil Procedure.") In appointing Mr. Coon executor, the trial court reasoned:

> There is certainly what appears to be a valid notarial testament that was filed and executed, original document. It does name Mr. Coon as the executor. Now, the argument is that Mr. Hall has been taking care of the taxes and the insurance, and that's verified in the depositions that were submitted. But that

doesn't make him the administrator or the executor of the succession. Mrs. Coon named her husband, Mr. Coon as the executor to the succession. He has taken some ill[-]advised actions before now, I think without the advice of counsel. He now has counsel very knowledgeable in the field of successions and estates. If he is named as executor, he will have to do everything with approval of the court. He will not be able to dispose of anything without the approval of the court. He will have to file accountings. Mr. Hall, if he has been expending things, is certainly entitled to assert a claim for reimbursement out of the estate for any amounts he's expended.

Considering the foregoing, we cannot conclude that the trial court abused its discretion in affirming Mr. Coon as testamentary executor, in accordance with Mrs. Coon's wishes.

### CONCLUSION

For the reasons above, we affirm the trial court's January 26, 2016 judgment. Costs of this appeal are assessed to appellants, Jeffrey Wayne Hall, Kimberly Ann Smith, Gerald Wayne Hall, Jr., Vickie Lynn Hall Frick, and Brian Keith Hall.

**AFFIRMED.**

---

**6.** Although the Hall Children maintain in their brief on appeal that Brian currently pays homeowner's insurance, the only evidence in the record shows that Brian, at the time of his deposition, had not been able to secure a homeowner's policy.