STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-0172

SUCCESSION OF MELBA MITCHELL GRIGGS

************

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 43991
HONORABLE LEO BOOTHE, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, Jimmie C. Peters, J. David
Painter, and Phyllis M. Keaty, Judges.

Cooks, J., dissents and assigns written reasons.

REVERSED AND REMANDED.

Brandy McClure
Smith, Taliaferro & Purvis
P. O. Box 298
Jonesville, LA 71343
(318) 339-8526
COUNSEL FOR PLAINTIFF/APPELLANT:
Francis Clyde Griggs

Brent Stafford Gore
Attorney at Law
111 Serio Boulevard
Ferriday, LA 71334
(318) 757-4545
COUNSEL FOR DEFENDANTS/APPELLEES:
Katheryne Belinda Hoover Tyson

**Glennell Hoover Byrd**
**Rita Bolyer**

PETERS, J.

Francis Clyde Griggs appeals a trial court judgment rendered against him in these succession proceedings finding him liable to the purported heirs of his deceased wife in the amount of $23,000.00. For the following reasons, we find that the purported heirs have no right or interest in instituting this suit and reverse the judgment.

**DISCUSSION OF THE RECORD**

This litigation began as a September 25, 2008 petition by Katheryne Belinda Hoover Tyson, Glennell Hoover Byrd, and Rita Bolyer (hereinafter sometimes referred to as "the Hoover heirs") to be placed in possession of the property belonging to their deceased mother, Melba Lee Mitchell Griggs. Their original petition asserts that their mother died intestate on June 9, 2000; that she had been married twice, first to Charles Ray Hoover, from whom she was divorced in February of 1971, and then to the defendant in these proceedings, Francis Clyde Griggs; that they were born of the marriage to Charles Ray Hoover; and that at the time of her death their mother was still married to Mr. Griggs. Of critical importance to the posture of the matter now before us, the Hoover heirs asserted in their petition to be placed in possession that "[n]o administration of this estate be[sic] required or is necessary." A notation at the end of the petition requested personal service on Mr. Griggs.

The Hoover heirs attached a three-page detailed descriptive list to their petition to be placed in possession. The attachment lists property both movable and immovable that they assert comprises the community property belonging to the deceased and Mr. Griggs, as well as two items of movable property that they claim were the separate property of their mother. The item at issue in this litigation is one of the two items of purported separate property and is described in the detailed

descriptive list as a "Guitar in possession of Harley Humphrey. Claim to be filed for return of guitar." The guitar's value is listed at $23,000.00.

The succession proceeding lay dormant for almost a year before the next filing occurred. On August 20, 2009, the Hoover heirs filed an amended detailed descriptive list wherein they again referred to the guitar along with other assets. The amended list described the guitar as follows:

> Guitar in or formerly in possession of Harley Humphrey. The Guitar was improperly and wrongfully in possession of Harley Humphrey by Francis Clyde Griggs. Francis Clyde Griggs or Harley Humphrey *owes the Succession* for return of guitar or its fair market value.

(Emphasis added.)

The listed value of the guitar remained at $23,000.00.

On that same day they amended the detailed descriptive list, the Hoover heirs filed a pleading entitled "<u>PETITION TO RETURN FUNDS TO THE SUCCESSION</u>." In this pleading, the Hoover heirs sought to name Harley Humphrey as a defendant in the proceedings. They asserted that Mr. Humphrey was Mr. Griggs' brother-in-law and that after their mother died Mr. Griggs had given Mr. Humphrey the guitar. The pleading sought a judgment against Mr. Humphrey ordering him "to return the guitar or funds equal to the amount of the guitar, *to be administered and distributed* pursuant to the orders of this Court." (Emphasis added.) Attached to the petition was an interrogatory addressed to Mr. Humphrey requesting that he produce an appraisal of the guitar that he purportedly had in his possession.

Mr. Griggs finally became a party to the litigation on October 7, 2009, when he filed a motion to traverse the Hoover heirs' detailed descriptive lists. In his pleading, Mr. Griggs asserted that various items not at issue in this appeal were not properly described and/or valued. In reference to the guitar, Mr. Griggs stated:

2

"Guitar was given to Harley Humphrey. The guitar did not work at the time of Mrs. Griggs' death. The value is incorrectly listed; the correct value is $0."

After a number of attempts to settle the disputes raised by Mr. Griggs' October 7, 2009 motion, those issues finally came before the trial court for hearing on March 8, 2010. However, before the beginning of the hearing on Mr. Griggs' traversal, the trial court allowed the Hoover heirs to confirm a default judgment against Mr. Humphrey based on the August 20, 2009 filing seeking recovery of the guitar or its value.

In the confirmation proceedings, Rita Bolyer testified on behalf of the Hoover heirs. After hearing Ms. Bolyer's testimony and after considering internet information with regard to the value of a vintage Martin guitar, which she suggested was the same brand as the guitar at issue in the litigation, the trial court rendered judgment against Mr. Humphrey in the amount of $67,500.00. The written judgment signed on March 26, 2010, awards the amount to the three Hoover heirs as "heirs to the estate of Melba Lee Mitchell Griggs."[1]

The hearing concerning the disputes between the Hoover heirs and Mr. Griggs began immediately after confirmation of the default judgment against Mr. Humphrey. Ms. Bolyer was again the only witness for the Hoover heirs. With regard to the guitar, she attempted to use the same internet information to establish the value of a vintage Martin guitar, but the trial court sustained Mr. Griggs' hearsay objection. She then testified that Mr. Griggs had informed her that Mr. Humphrey had told him that he (Mr. Humphrey) had a written appraisal reflecting the guitar's value at $23,000.00. The trial court rejected Mr. Griggs' hearsay objection to this testimony. When questioned concerning how she knew that the

---

[1] Counsel for Mr. Griggs objected to Ms. Bolyer's use of the internet information in establishing the value of the guitar, and the trial court made it clear that anything presented to confirm the default was not to be considered a part of the Hoover heirs' proof in the disputes between them and Mr. Griggs.

guitar at issue was a Martin guitar, Ms. Boelyn stated that "[w]e were raised with the guitar and my brother-in-law is an expert on musical instruments and he said it was a Martin guitar and Mr. Humphrey's attorney stated it was a Martin guitar in one of his letters corresponding to Mr. Gore [the Humphrey heirs' attorney]."[2]

Mr. Griggs acknowledged that the guitar at issue was the separate property of his deceased wife, but also testified that the guitar was never in very good condition despite his wife's attempts to fix it. He denied knowing the brand of the guitar or its value, and claimed that his wife had given the guitar to Mr. Humphries before her death. Mr. Griggs asserted that he had never heard his wife's son-in law play the guitar and had no idea of its value.

Upon completion of the evidence, the trial court took the matter under advisement. On June 17, 2010, the trial court entered a judgment addressing all the issues raised at the March 8, 2010 hearing. With regard to the guitar, the judgment stated the following:

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that there be Judgment herein *in favor of the Succession of MELBA LEE MITCHELL GRIGGS* and against Defendant, FRANCIS CLYDE GRIGGS, in the amount of $23,000.00, together with legal interest thereon from date of judicial demand until paid, for the wrongful conversion of one Martin guitar owned by the Succession of MELBA LEE MITCHELL GRIGGS and given by Defendant, FRANCIS CLYDE GRIGGS, to Defendant's brother-in-law, one Harley Humphrey, without the knowledge of or consent of KATHERYN BELINDA HOOVER TYSON, GLENNELL HOOVER BYRD, and RITA BOLYER.

(Emphasis added.)

By a judgment signed on October 19, 2010, the trial court rejected Mr. Griggs' motion for new trial on the guitar issue and this appeal followed. Mr. Griggs asserts in his one assignment of error that "[t]he trial court erred in its

---

[2]While Ms. Boelyn never identified her brother-in-law by name, it is apparent from the record that this is Freddie Joe Tyson.

conclusion that the value of the guitar in the Succession of Melba Lee Mitchell Griggs is $23,000.00."

## OPINION

The initial pleading filed by the Hoover heirs appears on the surface as nothing more than an attempt to take advantage of the provisions of La.Code Civ.P. arts. 3001-3008, which address a succession proceeding where the parties seek to be placed into possession of the assets of an intestate succession involving no underlying issues requiring an administrated succession. While nothing within that process contemplates its use to litigate disputed issues, the Hoover heirs make it clear in their initial detailed descriptive list that conflicts exist between their mother's estate and Mr. Griggs. That being the case, the proper approach to address the conflicting claims is by placing the succession under administration pursuant to La.Code Civ.P. art. 3091, *et seq.*, using the duly qualified succession representative appointed by the court as the proper plaintiff to enforce any right the succession may have against Mr. Griggs. *See* La.Code Civ.P. art. 685 and the comments that follow that Article.

That being the case, the Hoover heirs have no standing to pursue this claim through the succession proceeding as it now stands. Acting on the authority of La.Code Civ.P. art. 927(B), we grant an exception of no right of action as provided for by La.Code Civ.P. art. 927(A)(6) to reverse the trial court judgment and remand the matter to the trial court for further proceedings consistent with this opinion.[3]

## DISPOSITION

_____

[3] While the default judgment rendered against Harley Humphrey suffers from the same defect, that issue is not before us.

5

For the foregoing reasons, we reverse that part of the trial court judgment rendered against Francis Clyde Griggs and remand the matter to the trial court for further proceedings consistent with this opinion. We assess all costs of this appeal to Katheryne Belinda Hoover Tyson, Glennell Hoover Byrd, and Rita Bolyer.

**REVERSED AND REMANDED.**

**Cooks, J., Dissenting**

The three children and only heirs of the intestate decedent filed a petition for possession without administration. A Detailed Descriptive List showing the assets and debts of the succession was also filed. The decedent's separate and community property assets are listed, totaling an estimated $249,356.50 plus an undetermined amount of interest earned during the marriage on stock dividends, security funds and investments owned by Francis Clyde Griggs (Mr. Griggs). The total debts of the Succession are listed as $76,583.00 which includes a mortgage in the amount of $11,780.00; funeral expenses totaling $10,803.00; attorney fees and court costs $4,000.00; and $50,000.00 medical bills. The succession is not under administration. No creditor petitioned for an administration, and neither did Mr. Griggs or any of the three children. The heirs were willing to accept the succession and be placed in possession without the benefit of an inventory or appraisal of assets. *Counsel for plaintiffs and defendants both admitted in oral argument that an administration is not needed.*

Article 3001 of Code of Civil Procedure provides that heirs may be put in possession without an administration when all of the heirs are competent and all accept the succession and when "the succession is relatively free of debt". The code defines a succession as "relatively free of debt" when "its only debts are administration expenses, mortgages not in arrears, and debts of the decedent that are small in comparison with the assets of the succession". La.Code Civ. P. art. 3001(A). Based on the representations in the detailed descriptive list, and the amended list, the heirs of this succession could be sent into possession without an

administration.  Leaving out the mortgage which is not in arrears, and administration costs, the debts of the decedent are small in comparison with the assets.  See for example *Succession of Pyle*, 434 So.2d 523 (La. App. 2 Cir., 1983) wherein the court found that a succession was "relatively free from debt" where it had assets of $45,706.97 and debts of $28,845.51.  The ratio of assets to debts in the succession before us is much greater.

The Louisiana Civil Code provides in Article 934 "Succession occurs at the death of a person" and in Article 935 provides "Immediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them."  La.Civ. Code Art. 935 further provides "Prior to qualification of a succession representative only a universal successor may represent the decedent with respect to the heritable rights and obligations of the decedent."  La.Civ. Code Art. 936 provides "The succession of the decedent is transferred to his successors, whether testate or intestate, whether particular, general, or universal legatees.  A universal successor continues the possession with all its advantages and defects, and with no alteration in the nature of the possession."  Particularly relevant to the issue before us are the further provisions of the Louisiana Civil Code in Article 938 which provides: " (A) Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole.  (B) If a successor exercises his rights of ownership after the qualification of a succession representative, the effect of that exercise is subordinate to the administration of the estate."

The three heirs in this case acted prior to the qualification of a succession representative and under the express provisions of La.Civ. Code Art. 938(A), they have standing and they enjoy the right to exercise their rights as owners in any "thing" belonging to the estate, such as a guitar, or as to their interest in the whole

2

estate. It is true, as the majority points out, that La.Code Civ. P. art. 685 (emphasis added) provides in part: "Except as provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, *while the latter is under administration.*" However, when read with the aforementioned Code articles it is clear that Article 685 applies *only after a succession representative has been appointed.* It is not necessary in this case to appoint a succession representative as acknowledged by all parties concerned. The administration of this relatively small succession will needlessly deplete the assets. For these reasons I do not agree with the majority's granting an exception of no right of action on our own motion. I believe the heirs have a legal right to proceed, and we must review their appeal. For these reasons I must respectfully dissent.